**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000580**
**26-JAN-2024**
**08:21 AM**
**Dkt. 56 SO**

NO. CAAP-19-0000580


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


BECKY LYNN SWAN, Plaintiff-Appellee, v.
ROY WILLIAM GILLETTE, JR., Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 06-1-1864)

<u>SUMMARY DISPOSITION ORDER</u>
(By: Leonard, Acting Chief Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Roy William Gillette, Jr.

(**Gillette**) appeals from the July 17, 2019 Order Partially

Granting and Partially Denying Plaintiff's Motion and Declaration

for Post-Decree Relief (**2019 Order re Post-Decree Relief**) entered

by the Family Court of the First Circuit (**Family Court**)[1] in favor

of Plaintiff-Appellee Becky Lynn Swan (**Swan**).

Gillette raises four points of error on appeal,

contending that the Family Court erred in: (1) assuming

jurisdiction over Swan's post-decree motion; (2) concluding that

the Stipulated Agreement to Modify Decree Granting Absolute

Divorce, Filed Herein on 11/2/2007; Order (**2011 Stipulation and**

---

[1] The Honorable John C. Bryant, Jr. presided.

**Order**) was the original judgment; (3) its application of Hawaii Revised Statutes (**HRS**) § 657-5 (2016); and (4) certain Findings of Fact (**FOFs**) and Conclusions of Law (**COL**) supporting its decision in the 2019 Order re Post-Decree Relief.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Gillette's arguments as follows:

A Decree Granting Absolute Divorce was entered on November 2, 2007 (**2007 Divorce Decree**).  It is undisputed that the 2007 Divorce Decree awarded the Main House to Gillette, subject to an equalization payment to Swan (**Main House Equalization Payment**).  In Plaintiff's September 19, 2019 FOFs and COLs, the Family Court found, *inter alia*, that the 2011 Stipulation and Order "does not contain any provision addressing, modifying, forgiving, or cancelling the equalization payment;" the Family Court concluded, *inter alia*, that the 2011 Stipulation and Order "did not address or amend the [2007 Divorce] Decree's provisions regarding the Main House."  This finding and conclusion are undisputed, and upon review, we conclude that neither one is wrong.

The dispositive issue in this appeal is whether the ten-year statute of limitation to enforce the Main House Equalization Payment runs from the 2007 Divorce Decree or the 2011 Stipulation and Order.

HRS § 657-5 provides:

> **§ 657-5  Domestic judgments and decrees.**  Unless an extension is granted, every judgment and decree of any court

2

of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered.  No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended.  No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgment or decree was rendered.  A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree.  No extension shall be granted without notice and the filing of a non-hearing motion or a hearing motion to extend the life of the judgment or decree.

In Estate of Roxas v. Marcos, 121 Hawaiʻi 59, 214 P.3d 598 (2009), the Hawaiʻi Supreme Court held:

> In construing "original judgment" of HRS § 657-5, *in pari materia* within the framework of the entire statutory scheme governing limitations of actions, the statute of limitations for extending a judgment begins to run when the cause of action—the judgment that creates the enforceable claim or right—"come[s] into existence as an enforceable claim or right."  All judgments, even those that are modified or amended, become "enforceable claim[s] or right[s]" only when the judgments creating those rights are entered.  It is only at the time that the judgment is rendered when the parties are (1) aware of their rights and responsibilities created by the judgment and (2) able to enforce these rights.  Accordingly, the statute of limitations for extending a judgment begins to run at the creation of the judgment that creates the rights and responsibilities that the party is seeking to extend.

121 Hawaiʻi at 69, 214 P.3d at 608 (emphasis added).

The supreme court explained:

> We hold . . . that "original judgment" of HRS § 657-5 pertains to the judgment that creates the rights and responsibilities that the moving party is seeking to enforce and extend.

Id. at 71, 214 P.3d at 610.

With respect to an amended judgment, the supreme court held:

> Where an unextended judgment is "amended in a material and substantial respect," so that it creates the rights that are being extended, the time within which a motion to extend the judgment may be brought "begins to run from the date of the amendment," because that judgment created those rights.

Id. at 72, 214 P.3d at 611 (citation omitted and emphasis altered).

3

In applying that rule to the case before it, the supreme court, *inter alia*, held:

> Under the foregoing construction of HRS § 657-5, Petitioners timely sought to extend the Second and Fourth Amended Judgments. Petitioners moved to extend these judgments <u>within ten years of the date that **the judgments that created the rights** to be extended were rendered.</u>
>
> <u>The Second Amended Judgment</u>, filed on October 18, 1999, <u>granted judgment</u> "in favor of [Dacanay,] as personal representative of the estate of Roger Roxas in the amount of $6 million in general damages <u>for false imprisonment and battery</u> against Imelda Marcos in her personal capacity, to the extent of her interest in the Marcos Estate." **This right was created by the Second Amended Judgment.** The first-in-time judgment (rendered on August 28, 1996) and the Amended Judgment (rendered on October 21, 1996) do not qualify as an "original judgment" for purposes of extending the Second Amended Judgment, because they did not present enforceable rights on Petitioners' claims of battery and false imprisonment against Imelda Marcos in her personal capacity. The first-in-time judgment and Amended Judgment were materially and substantially changed by the Second Amended Judgment. Accordingly, <u>the Second Amended Judgment is the "original judgment" on the false imprisonment and battery claims</u> against "Imelda Marcos in her personal capacity, to the extent of her interest in the Marcos Estate."

121 Hawaiʻi at 73, 214 P.3d at 612 (citation and footnote omitted; emphasis altered).

Here, the 2007 Divorce Decree was the judgment that created the Main House Equalization Payment due to Swan. The 2011 Stipulation and Order did not create, modify, or address the Main House Equalization Payment. Therefore, the Family Court erred in concluding that in 2019, the statute of limitations applicable to the Main House Equalization Payment had not expired.[2]

---

[2] We express no opinion as to whether the statute of limitations has since run on the 2011 Stipulation and Order.

4

Accordingly, the Family Court's 2019 Order re Post-Decree Relief is reversed.

DATED: Honolulu, Hawaiʻi, January 26, 2024.

On the briefs:

Sheila Vierra,
Jo-Ann K. Takara,
for Defendant-Appellant.

Richard J. Diehl,
Christine D. Weger,
(Diehl & Weger, Attorneys at
 Law, a Law Corporation),
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

5